1
2
3
4
5
6
7
8
9
10
11

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

James K. Matlean,

        Plaintiff,

    v.

James Dzurenda, et al.,

        Defendants.

Case No. 2:19-cv-01498-APG-DJA

**Order
and
Report and Recommendation**

12
13
14
15
16

      Plaintiff is in the custody of the Nevada Department of Corrections (NDOC).  He has submitted a motion to amend his civil rights complaint under 42 U.S.C. § 1983.  (ECF No. 38).  Defendant Gentry filed a non-opposition to Plaintiff's motion to amend but requested that the Court screen the proposed amended complaint.  (ECF No. 40).  No other Defendant responded.  The Court finds these matters properly resolved without a hearing.  LR 78-1.

17

**I.      Re-screening standard.**

18
19
20
21
22
23
24
25
26
27
28

      Federal courts conduct a preliminary screening in a case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.  *See* 28 U.S.C. § 1915A(a).  Screening identifies cognizable claims and dismisses all claims that are frivolous, malicious, or fail to state claims upon which relief may be granted.  *Id.* at §§ 1915(e)(1)-(2).  The court applies the Federal Rule 12(b)(6) dismissal standard when screening complaints.  *See Hamilton v. Brown*, 630 F.3d 889, 892-93 (9th Cir. 2011).  Each claim must be supported by sufficient factual allegations to make the claim "plausible on its face" and have a basis in a cognizable legal theory.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Chubb Custom Ins. Co. v. Space Systems/Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013).  Federal courts do not ordinarily rescreen amended complaints, but they may do so at their discretion on a case-by-case basis.  *See*

1   *Olausen v. Murguia*, No. 3:13-cv-00388-MMD-VPC, 2014 WL 6065622, at *5 (D. Nev. Nov. 12,

2   2014).

3       Review under Rule 12(b)(6) is essentially a ruling on a question of law.  *See Chappel v.*

4   *Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000).  Dismissal for failure to state a claim is

5   proper only if the plaintiff cannot prove any set of facts in support of the claim that would entitle

6   him or her to relief.  *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999).  In making this

7   determination, the court takes as true all allegations of material fact stated in the complaint and

8   construes them in the light most favorable to the plaintiff.  *See Warshaw v. Xoma Corp.*, 74 F.3d

9   955, 957 (9th Cir. 1996).  Allegations of a *pro se* complainant are held to less stringent standards

10  than formal pleadings drafted by lawyers.  *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980).  While the

11  standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide

12  more than mere labels and conclusions.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555

13  (2007).  A formulaic recitation of the elements of a cause of action is insufficient.  *Id.*

14  **II.     Re-screening of Plaintiff's amended complaint.**

15      Plaintiff sues multiple defendants for events that took place while he was incarcerated at

16  Saguaro Correctional Center (SCC) and Southern Desert Correctional Center (SDCC).  (ECF No.

17  38).  Plaintiff amends his complaint to add Defendants SDCC Warden W. Hutchings, CoreCivic,

18  SDCC Assistant Warden Picket[t], SDCC Correctional Officer Bejar, SDCC Assistant Warden J.

19  Bradley, and John and Jane Doe defendants.  Plaintiff also re-names the Defendants from his

20  original complaint: NDOC Director James Dzurenda, SDCC Warden Jo Gentry, NDOC O.M.D.

21  Dwayne Deal, NDOC Contract Monitor Robert Mears, SCC Warden Todd Thomas, SCC

22  Assistant Warden B. Greigo, SCC Chaplain J. Emerson[1], SCC Chaplain J. Warner, SCC Unit

23  Manager J. Guilin, and SDCC Assistant Warden J. Bradley.  Plaintiff alleges three counts and

24  seeks injunctive and monetary relief.  Many of the facts in Plaintiff's amended complaint are re-

25  asserted from his original complaint.  The Court thus re-screens only the new allegations.

26

27  _____

    [1] Plaintiff refers to this individual alternatively as either Edmerson or Emerson.  As Emerson is

28  used more frequently, the Court refers to this person as Emerson.

1

### A.    Count I.

2      In Count I, Plaintiff reasserts his claims from his original complaint and adds facts to

3  support his claims against CoreCivic, Dzurenda, Deal, and Mears.  ECF No. 38 at 9-14.  Plaintiff

4  adds that, after he was informed by Chaplain Warner that there were no outdoor Wiccan services

5  "per [CoreCivic] policy" that Plaintiff argued that CoreCivic "cannot make a policy denying him

6  his right to practice his religion."  *Id.* at 9.  Plaintiff explains that Hawaiian inmates could

7  celebrate their pagan religion outdoors with a sweat lodge and fire pit, but that Nevada inmates

8  would not be accommodated for any of their needs.  *See id.* at 12.

9      Plaintiff also adds that he contacted Mears, who was the Nevada inmates' "contract

10  monitor" on numerous occasions through grievances, letters, and verbal communications

11  regarding the denial of outdoor land for Wiccan services.  *See id.* at 14.  Mears allegedly

12  responded that he "would speak to the I.G. office about it" but Plaintiff never received a response.

13  *See id.*  Plaintiff adds that "Mears had a duty to investigate and fix the constitutional violations as

14  an official of NDOC."  *Id.*  Plaintiff concludes by explaining that Dzurenda and Deal "were also

15  notified by mail and I received no response."  *Id.*  Based on these allegations, Plaintiff claims that

16  the Defendants violated his First Amendment religious rights, the Religious Land Use and

17  Institutionalized Persons Act of 2000 (RLUIPA) and discriminated against him on the basis of his

18  race and religion.  *Id.* at 3-14.  Plaintiff adds a claim that the Defendants violated his Fourteenth

19  Amendment equal protection rights.  *See id.*

20          1.    Violation of the First Amendment free exercise clause and RLUIPA.

21      The First Amendment to the United States Constitution provides that Congress shall make

22  no law respecting the establishment of religion or prohibiting the free exercise thereof.  U.S.

23  Const. Amend. I.  The United States Supreme Court has held that inmates retain protections

24  afforded by the First Amendment "including its directive that no law shall prohibit the free

25  exercise of religion."  *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).  The Supreme

26  Court also has recognized that an inmate's "limitations on the exercise of constitutional rights

27  arise both from the fact of incarceration and from valid penological objectives—including

28  deterrence of crime, rehabilitation of prisoners, and institutional security."  *Id.*  "A person

asserting a free exercise claim must show that the government action in question substantially

burdens the person's practice of his religion.  A substantial burden…place[s] more than an

inconvenience on religious exercise; it must have a tendency to coerce the individuals into acting

contrary to their religious beliefs or exert substantial pressure on an adherent to modify his

behavior and to violate his beliefs." *Jones v. Williams*, 791 F.3d 1023, 1031–32 (9th Cir. 2015)

(internal quotations and citations omitted).  If such a belief is substantially burdened, "the

regulation is valid if it is reasonably related to legitimate penological interest." *Turner v. Safley*,

482 U.S. 78, 89 (1987).

Claims brought under RLUIPA are similar free-exercise-of-religion claims.  The Act

prohibits any government from imposing "a substantial burden on the religious exercise of a

person residing in or confined to an institution…unless the government demonstrates that

imposition of the burden on that person (1) is in furtherance of a compelling governmental

interest; and (2) is the least restrictive means of furthering that compelling governmental

interest."  42 U.S.C. § 2000cc-1(a)(1)-(2).  A plaintiff has the initial burden of proving that the

prison's actions implicated the plaintiff's religious exercise and that the prison's actions

substantially burdened the exercise of religion.  *Holt v. Hobbs*, 135 S. Ct. 853, 862 (2015).

RLUIPA broadly defines "religious exercise" as "any exercise of religion, whether or not

compelled by, or central to, a system of religious belief."  42 U.S.C.A. § 2000cc-5(7)(A).

"RLUIPA is to be construed broadly in favor of protecting an inmate's right to exercise his

religious beliefs." *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005) (citing 42

U.S.C.A. § 2000cc-3(g)).  RLUIPA's substantial-burden inquiry asks whether the government

substantially burdened religious exercise, not whether the RLUIPA claimant is able to engage in

other forms of religious exercise. *See Holt*, 135 S. Ct. at 862.  A substantial burden on religious

exercise must impose a significantly great restriction on the exercise. *San Jose Christian Coll. v.

City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004).

Here, Plaintiff has stated a colorable First Amendment and RLUIPA claim against

CoreCivic, Mears, Dzurenda, and Deal.  He alleges that the Defendants have substantially

burdened his ability to practice his sincerely held religious beliefs.  The Court liberally construes

the amended complaint as alleging that Plaintiff is a devout Wiccan.  As part of his religious beliefs, he needs access to an outdoor space to worship.  He also needs the ability to perform fire ceremonies and a sweat lodge, as well as religious items such as herbs, oils, and stones.  Plaintiff asserts that CoreCivic had a policy of refusing to provide outdoor pagan services to Nevada inmates, despite accommodating the religious needs of pagan Hawaiian inmates.  Plaintiff also asserts that he informed Mears, Dzurenda, and Deal about his religious needs, but they did not act to ensure that Plaintiff's religious needs were accommodated at SCC.  The Court liberally construes the amended complaint as alleging that Defendants could have worked with CoreCivic[2] to accommodate Plaintiff's religious needs but refused.  Based on these allegations, Defendants placed a substantial burden on Plaintiff's exercise of his religious beliefs.  These allegations are sufficient to state a colorable claim on screening.  These claims will proceed against CoreCivic, Mears, Dzurenda, and Deal along with Warner, Guilin, Greigo, Bradley, Thomas, and Emerson, as the Court determined in its original screening.

2.    Discrimination in violation of the Fourteenth Amendment equal protection clause.

"[T]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents."  *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (internal quotations omitted).  The Equal Protection Clause of the Fourteenth Amendment is essentially a directive that all similarly situated people be treated equally under the law.  *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  Plaintiff states a colorable equal protection claim against CoreCivic, Mears, Dzurenda, and Deal.

As in analyzing his original complaint, the Court notes that Plaintiff's allegations do not support the conclusion that defendants discriminated against him based on his race and religion.  According to the complaint, SCC has a policy of providing religious accommodations for pagan

---

[2] Dzurenda, Deal, and Mears are NDOC employees, rather than employees of SCC.

inmates sent to SCC from Hawaii but not providing religious accommodations for pagan inmates sent to SCC from Nevada.  Based on this allegation, the Defendants treated Plaintiff differently from the Hawaiian inmates because he was transferred to SCC from a Nevada prison, rather than a Hawaii prison.  This does not support the conclusion that the defendants deliberately discriminated against Plaintiff based on his race or religion.

However, for the purposes of screening, Plaintiff's new allegations against CoreCivic, Mears, Dzurenda, and Deal are sufficient.  Plaintiff's allegations are sufficient to support that CoreCivic had a policy of treating inmates transferred from Nevada differently from similarly situated inmates transferred from Hawaii without any rational basis for the distinction.  Plaintiff also asserts that he informed Mears, Dzurenda, and Deal of this discrepancy, but that his complaints went unanswered.  This is sufficient to state a colorable equal protection claim for the purposes of screening.  This claim will proceed against CoreCivic, Mears, Dzurenda, and Deal along with Warner, Guilin, Greigo, Bradley, Thomas, and Emerson, as the Court determined in its original screening.

**B.      Count II.**

Plaintiff's allegations in count two are substantially the same in his amended complaint as they were in his original complaint.  *Id.* at 15-18.  In screening his original complaint, the Court allowed Plaintiff's allegations to proceed against Gentry for First Amendment retaliation.  The Court also dismissed Plaintiff's due process claim.  Similarly, now, the First Amendment retaliation claim will proceed against Gentry.  The Court further recommends that the Fourteenth Amendment due process claim remain dismissed with prejudice as amendment would be futile.

**C.      Count III.**

In his third count, Plaintiff adds new claims related to his legal mail that he asserts was wrongfully withheld after he was transferred from SCC back to SDCC in Nevada.  *See id.* at 19-22.  On February 21, 2021, Plaintiff's federal public defender—Jeremy Baron—forwarded Plaintiff's case file to SDCC so that Plaintiff could file a writ of certiorari.  *See id.* at 19.  Fifty-six days later, Plaintiff learned that SDCC had received the boxes containing his case file, searched them, and withheld them because the boxes contained unauthorized items.  *See id.* at 19-20.

1   Plaintiff only learned that his boxes were withheld after Baron called Hutchings' office

2   and spoke with Hutchings' assistant, who told Baron that the boxes contained unauthorized items.

3   *See id.* at 20.  Hutchings' assistant then told Baron that the prison would send the boxes back to

4   him to remove the unauthorized items.  *See id.*  Baron then mailed the boxes back to SDCC on

5   April 27, 2021, but Plaintiff did not receive them until he and Baron made repeated requests to

6   Bejar and Hutchings to pick up the boxes.  *See id.* at 21.  Plaintiff received the boxes on May 5,

7   2021.  *See id.*

8   When Plaintiff went to the mailroom to receive his boxes, Bejar[3] informed him that the

9   reason it took fifty-six days to send his mail back was because she had found the boxes "in the

10   corner under a bunch of unauthorized mail."  *See id.* at 21-22.  Bejar told Plaintiff that upon

11   finding the boxes, she had contacted her supervisor, Pickett, who told her to send the boxes back

12   to Baron.  *See id.*  Plaintiff suggests that it is suspicious that Bejar knew what was in the boxes

13   but claimed to have not opened them  *See id.*  Plaintiff attaches an unauthorized mail notification

14   from Bejar dated April 20, 2021 in which Bejar writes that the boxes contained "numerous

15   CD's/flash drives" and "excessive paperwork [which] exceeds limit."  *Id.* at 57.  Plaintiff alleges

16   that, because of the delay in getting his boxes, he missed the deadline to file his writ of certiorari

17   and believes that this was in retaliation for his suit against Gentry.  *See id.* at 22.  He adds that

18   Pickett authorized Bejar to violate Plaintiff's constitutional rights.  *See id.*

19   1.   Violation of First Amendment rights by retaliation and confiscating
20        Plaintiff's mail.

21   To state a viable First Amendment retaliation claim in the prison context, a plaintiff must

22   allege: "(1) [a]n assertion that a state actor took some adverse action against an inmate

23   (2) because of (3) that prisoner's protected conduct and that such action (4) chilled the inmate's

24   exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate

25

26   [3] Plaintiff asserts that "Investigator Ruiz" was present in the room with Bejar but does not
    otherwise assert any claims against this individual.  It is also unclear whether Plaintiff asserts
27   Ruiz was present when Bejar found the boxes or when Bejar told Plaintiff about finding the
    boxes.  Without more information, the Court will not interpret Ruiz to be a named Defendant.
28

correctional goal." *Id.* at 567-68.  The Ninth Circuit has also recognized that prisoners have a protected First Amendment interest in having properly marked legal mail opened only in their presence.  *See Hayes v. Idaho Correctional Center*, 849 F.3d 1204, 1211 (9th Cir. 2017).  Here, Plaintiff does not state a colorable First Amendment retaliation claim but does state a colorable First Amendment claim related to his mail being opened without his knowledge.

Plaintiff's claim for retaliation fails because, although he claims that the prison confiscated his mail as retaliation for filing suit against Gentry, he does not connect the prison's actions with his suit against Gentry.  Rather, Plaintiff describes the withholding of his mail more like an accident in which the boxes were placed in a corner with other unauthorized mail, rather than an intentional decision to retaliate.  The Court dismisses this claim without prejudice.

However, Plaintiff does state a colorable claim against Bejar, Hutchings, and Pickett for opening his legal mail outside of his presence.  Plaintiff claims that he did not learn that he had received legal mail until fifty-six days after it was delivered and only after someone had opened and inspected the boxes outside his presence.  While Plaintiff does not assert whether it was Bejar, Hutchings, or Pickett who inspected the boxes, he does allege that each Defendant was aware that the boxes contained unauthorized items but never called on Plaintiff to be present when they were inspected.  For the purposes of screening, Plaintiff alleges a colorable First Amendment claim against Bejar, Hutchings, and Pickett.

2.   Violation of the Fourteenth Amendment right to due process and Fourth Amendment right to privacy.

The Court liberally construes Plaintiff's claims for "4th Amendment denial of due process against seizure of property creating liberty interest" and "14th Amendment right to privacy and retaliation," as: (1) a claim for violation of his Fourth Amendment right to privacy; and (2) a violation of his Fourteenth Amendment due process rights.  Prison officials may "inspect" or "scan" but not "read" legal mail.  *See Nordstrom v. Ryan (Nordstrom I)*, 762 F.3d 903, 909 (9th Cir. 2014).  Inmates have a Fourteenth Amendment due process liberty interest in receiving notice that their incoming mail is being withheld.  *See Frost v. Symington*, 197 F.3d 348, 353 (9th

Cir. 1999).  Under Administrative Regulation 722.08(4), legal mail will be held by staff for a maximum of 24 hours excluding weekends and holidays.  *See* AR 722.08(4).  Under Administrative Regulation 750.06(1), if any item of mail addressed to an inmate is rejected for any reason, the inmate shall receive written notice.  *See* AR 750.06(1).

Here, Plaintiff does not state a colorable claim for violation of his Fourth Amendment right to privacy.  Although he claims that Bejar seemed to know what was in the boxes although she said she had not opened them, Plaintiff does not explain whether Bejar was describing the format of the documents—the CDs, flash drives, and excessive paperwork—or the contents of the documents.  Because Plaintiff has not claimed that Bejar, or anyone else, read his legal mail, rather than simply scanning or inspecting it, the Court dismisses his Fourth Amendment claim without prejudice.

Plaintiff does, however, state a colorable claim for violation of his Fourteenth Amendment due process rights.  Plaintiff asserts that he did not receive notice that his mail was being withheld until fifty-six days after Baron sent it.  Because this was legal mail, Plaintiff should have received the boxes, or notice that the boxes were being withheld or returned, within 24 hours.  Instead, Plaintiff has demonstrated that he did not receive notice about his mail being withheld until after Baron contacted Hutchings' office days later.  Plaintiff also asserts that Pickett had told Bejar to mark the boxes unauthorized and send them back to Baron but that neither Pickett nor Bejar informed Plaintiff that he had received legal mail.  Once Baron re-sent the boxes, it then took multiple requests over multiple days to Hutchings and Bejar for Plaintiff to inspect them.  Plaintiff has thus stated a colorable claim for violation of his Fourteenth Amendment due process rights against Hutchings, Pickett, and Bejar.

3.  Violation of the Sixth Amendment right to self-representation.

Federal criminal defendants have both a statutory and a Sixth Amendment right to waive counsel and represent themselves when they voluntarily and intelligently so elect.  28 U.S.C. § 1654.  Additionally, under the Sixth Amendment, an accused in a criminal prosecution is entitled to a speedy trial, an impartial jury, knowledge of the accusations against him, the ability to call and confront witnesses, and to assistance of counsel in his defense.  U.S. Const. Amend.

1  VI.  However, the Sixth Amendment's Speedy Trial protection detaches upon conviction.  *See*

2  *Betterman v. Montana*, 578 U.S. 437, 136 S.Ct. 1609, 1613 (2016).

3      Plaintiff appears to be alleging that he was deprived of the opportunity to defend himself

4  when Hutchings, Bejar, and Pickett failed to inform him or Baron that they were confiscating his

5  legal mail.  He also seems to allege that Hutchings, Bejar, and Pickett violated his Sixth

6  Amendment right to a speedy trial by interfering with his ability to file his writ of certiorari.

7  However, neither of these claims fit within the Sixth Amendment.  Plaintiff was not deprived of

8  the right to defend himself when his mail was withheld.  Plaintiff does not allege that he was

9  prevented from proceeding *pro se*.  Nor was Plaintiff deprived of the right to a speedy trial.

10  While Plaintiff alleges to have missed the writ of certiorari deadline, the speedy trial guarantees

11  of the Sixth Amendment apply to the underlying trial process, rather than the appeals process.

12  The Court thus recommends dismissal of this claim with prejudice because amendment would be

13  futile.

14          4.   Cruel and unusual punishment in violation of the Eighth Amendment.

15      "Establishing a violation of the Eighth Amendment requires a two-part showing."  *Foster*

16  *v. Runnels*, 554 F.3d 807, 810, 812 (9th Cir. 2009) (finding that an inmate established an Eighth

17  Amendment violation when he was deprived of 16 meals in a 23-day period).  First, an inmate

18  must objectively show that he was deprived of something sufficiently serious.  *Id.*  A deprivation

19  is sufficiently serious when the prison official's act or omission results in the denial of the

20  minimal civilized measure of life's necessities.  *Id.*  The inmate must then make a subjective

21  showing that the deprivation occurred with deliberate indifference to the inmate's health or

22  safety.  *Id.*

23      Here, Plaintiff does not state a colorable claim for cruel and unusual punishment.

24  Although he asserts that Defendants violated his rights by withholding his mail, he cannot equate

25  the delay he experienced in receiving his mail with a denial of the "minimal civilized measure of

26  life's necessities" or that the deprivation was done with deliberate indifference to his health or

27  safety.  The Court recommends dismissal of this claim with prejudice because amendment would

28  be futile.

**ORDER**

    **IT IS THEREFORE ORDERED** that Plaintiff's motion to amend his complaint (ECF No. 38) is **granted.**

    **IT IS FURTHER ORDERED** that:

- Plaintiff's First Amendment and RLUIPA free exercise claims in Count I will proceed against CoreCivic, Mears, Dzurenda, Deal, Warner, Guilin, Greigo, Bradley, Thomas, and Emerson.
- Plaintiff's Fourteenth Amendment equal protection claim in Count I will proceed against CoreCivic, Mears, Dzurenda, Deal, Warner, Guilin, Greigo, Bradley, Thomas, and Emerson.
- Plaintiff's First Amendment retaliation claim in Count II will proceed against Gentry.
- Plaintiff's First Amendment mail confiscation claim in Count III will proceed against Bejar, Hutchings, and Pickett.
- Plaintiff's Fourteenth Amendment due process claim in Count III will proceed against Bejar, Hutchings, and Pickett.

    **IT IS FURTHER ORDERED** that:

- Plaintiff's First Amendment retaliation claim in Count III is dismissed without prejudice.
- Plaintiff's Fourth Amendment privacy claim in Count III is dismissed without prejudice.

    **IT IS FURTHER ORDERED** that the Clerk of Court is kindly directed to file Plaintiff's amended complaint (ECF No. 38 at 3-64) and send Plaintiff a courtesy copy of the amended complaint.  The Clerk of Court is also kindly directed to issue summonses for CoreCivic, Mears, Dzurenda, Deal, Bejar, Hutchings, Pickett, Warner, Guilin, Greigo, Bradley, Thomas, and Emerson and deliver them, along with enough copies of the amended complaint, to the U.S. Marshal for service.  The Clerk of Court is also kindly directed to send Plaintiff fifteen USM-285 forms.

**IT IS FURTHER ORDERED** that Plaintiff shall have **30 days**—**until Thursday, November 18, 2021**—within which to furnish to the U.S. Marshal the required USM-285 forms with relevant information as to CoreCivic, Mears, Dzurenda, Deal, Bejar, Hutchings, Pickett, Warner, Guilin, Greigo, Bradley, Thomas, and Emerson on the forms.  Within **20 days** after receiving from the U.S. Marshal a copy of the USM-285 forms showing whether service has been accomplished, Plaintiff must file a notice with the Court identifying which defendants were served and which were not served, if any.  If Plaintiff wishes to have service again attempted on an unserved defendant, then a motion must be filed with the Court identifying the unserved defendants and specifying a more detailed name and address for those defendants or whether some other manner of service should be attempted.

**RECOMMENDATION**

**IT IS RECOMMENDED** that:

- Plaintiff's Fourteenth Amendment due process claim in Count II be dismissed with prejudice as amendment would be futile.
- Plaintiff's Sixth Amendment right to self-representation claim in Count III be dismissed with prejudice as amendment would be futile.
- Plaintiff's Eighth Amendment cruel and unusual punishment claim in Count III be denied with prejudice as amendment would be futile.

**NOTICE**

This report and recommendation is submitted to the United States District Judge assigned to this case under 28 U.S.C. § 636(b)(1).  A party who objects to this report and recommendation may file a written objection supported by points and authorities within fourteen days of being served with this report and recommendation.  Local Rule IB 3-2(a).  Failure to file a timely objection may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED: October 19, 2021

_____
DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE